**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| LAWERENCE BRANDON, individually and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | Case No. _____ |
| v. | ) ) ) | |
| PEPSICO, INC., a North Carolina Corporation and THE QUAKER OATS COMPANY, a New Jersey Corporation, | ) ) ) ) | **JURY TRIAL DEMAND** |
| Defendants. | ) ) | |

## CLASS ACTION COMPLAINT

Todd L. McLawhorn
*tmclawhorn@siprut.com*
Stewart M. Weltman
*sweltman@siprut.com*
Michael Chang
*mchang@siprut.com*
SIPRUT PC
17 North State Street
Suite 1600
Chicago, Illinois 60602
Phone: 312.236.0000
Fax: 312.754.9616
**www.siprut.com**

Mila F. Bartos
FINKELSTEIN THOMPSON LLP
3201 New Mexico Avenue
Suite 395
Washington, D.C. 20016
Phone: 202.337.8000
Fax: 202.337.8090
**www.finkelsteinthompson.com**

*Attorneys For Plaintiff*

Plaintiff Lawerence Brandon brings this action on behalf of himself and all others similarly situated against Defendants PepsiCo, Inc. and The Quaker Oats Company and states:

## FACTUAL ALLEGATIONS

1. Defendants manufacture, market, sell, and distribute various food products under the Quaker Oats brand. This lawsuit concerns seventeen of those products: (1) Quaker Dinosaur Eggs – Brown Sugar Instant Oatmeal; (2) Quaker Steel Cut Oats; (3) Quaker Old Fashioned Oats; (4) Quaker Simply Granola Oats, Honey, Raisins & Almonds; (5) Quaker Instant Oatmeal, Cinnamon & Spice; (6) Quaker Instant Oatmeal, Apples & Cinnamon; (7) Quaker Real Medleys Super Grains Banana Walnut; (8) Quaker Overnight Oats, Raisin, Walnut & Honey Heaven; (9) Quaker Overnight Oats Unsweetened with Chia Seeds; (10) Quaker Oatmeal Squares, Brown Sugar; (11) Quaker Oatmeal Squares, Honey Nut; (12) Quaker Simply Granola Oats, Honey & Almonds; (13) Quaker Breakfast Flats Crispy Snack Bars, Cranberry Almond; (14) Quaker Chewy Chocolate Chip; (15) Quaker Chewy S'mores; (16) Quaker Breakfast Squares Soft Baked Bars, Peanut Butter; and (17) Quaker Chewy Peanut Butter Chocolate Chip (the "Products").[1]

2. In marketing the Products, Defendants seek to appeal to the consuming public's ever-growing health consciousness and increasing appetite for nutritious, wholesome foods that will benefit their health and avoidance of highly-processed foods with non-healthy attributes such as GMOs, artificial additives, gluten, added sugars, and hydrogenated oils.

3. Defendants make several detailed representations about the health attributes of the Products on the front of the Product packages. For example, Defendants represent on the front of the Old Fashioned Oats Product that the Product is "100% Whole Grain" and verified "NON GMO", that it provides "Lasting Energy" and a "Good source of fiber to help support a healthy

---

[1] Plaintiff reserves the right to add additional products upon completion of discovery.

- 1 -

digestive system", and that it "can help reduce cholesterol", and "may reduce the risk of heart disease". Similarly, the front of the Quaker Steel Cut Oats Product states that the Product contains "HEARTY 100% WHOLE GRAIN OATS", is a "Good source of fiber to help support a healthy digestive system", "can help reduce cholesterol", "may reduce the risk of heart disease", is "Non GMO verified", and provides "lasting energy". Defendants make one or more similar attribute representations on the front of the other Product packages. These representations are collectively referred to as the "Product Health Representations".

4. The Product Health Representations lead reasonable consumers to believe the Products will foster their "good health" and not pose a safety risk to or potentially harm their health.

5. However, recent testing by the Environmental Working Group (EWG), a nonprofit organization dedicated to protecting human health and the environment, revealed that Defendants' Products contain glyphosate, with Quaker Old Fashioned Oats having the highest levels of the 45 products tested. EWG's Children's Health Initiative, "Breakfast With a Dose of Roundup?" August 15, 2018, *available at* https://www.ewg.org/childrenshealth/glyphosateincereal/#.W3TTbPZFw2w ("EWG") (last visited August 23, 2018). A second round of testing by EWG confirmed that glyphosate is a staple contaminant in Quaker products. *See* EWG, "Roundup for Breakfast, Part 2: In New Tests, Weed Killer Found in All Kids' Cereals Sampled." October 24, 2018, *available at* https://www.ewg.org/release/roundup-breakfast-part-2-new-tests-weed-killer-found-all-kids-cereals-sampled ("EWG 2") (last visited December 5, 2018). Glyphosate is one of the most widely used weed killing poisons in the United States. EWG. It is also sprayed on wheat, barley, and oats as a preharvest desiccant to dry the grain faster. Each year, more than 250 million pounds of

glyphosate is sprayed on American crops, including wheat, barley, and oats just before they are harvested. *Id.* Glyphosate adheres to the crops and Defendants' cleansing process fails to remove the glyphosate residue.

6. The International Agency for Research on Cancer, part of the World Health Organization, has determined that glyphosate is "probably carcinogenic to humans". IARC Monographs Volume 112: evaluation of five organophosphate insecticides and herbicides, March 20, 2015, *available at* http://www.iarc.fr/en/media-centre/iarcnews/pdf/MonographVolume112.pdf (last visited August 23, 2018). Glyphosate is even more dangerous for children, who are more susceptible to carcinogens. *See EWG.* This is because, *inter alia*, children's detoxification pathways are not yet fully developed, so their ability to eliminate even tiny amounts of pesticides and other harmful chemicals is limited. The danger is amplified by the fact that few people, children in particular, eat only a single serving of the Products on any given day and repeated daily exposures can add up.

7. Because it is a probable carcinogen with no nutritional value, the presence of *any* amount of glyphosate in the Products, no matter whether above or below regulatory limits, is material to reasonable consumers particularly since there are numerous comparable products without glyphosate. No reasonable consumer would purchase the Products knowing that they contained glyphosate.

8. Even though Defendants knew that the Products contain the probable carcinogen glyphosate or, at a minimum, that they could not guarantee the Products did not contain glyphosate given its wide use as a pesticide, Defendants do not disclose this information on the front of the Product labels, choosing instead to specifically identify only the healthy attributes of the Products. Nor do Defendants include this information on the back or sides of the packages, where more

detailed Product information is generally found, instead choosing to repeat and reinforce the Health Representations identified on the front of the packages. In fact, nowhere on the Product packages—inside or out—do Defendants disclose that the Products contain or likely contain glyphosate, such that Defendants' Product Health Representations are false, deceptive, or, at a minimum, misleading half-truths.

9. As the manufacturers and distributors of the Products, Defendants knew that the Products contained or likely contained glyphosate. By contrast, Plaintiff and consumers did not and do not have access to such information. Nor is that fact easily discovered by Plaintiff and consumers before purchase of the Products. Because Defendants had knowledge that the Products contain or likely contain glyphosate, and Plaintiff and consumers did not, Defendants had a duty to disclose that fact—and that glyphosate is a probable carcinogen—to consumers. Defendants did not disclose these material facts.

10. Consumers have a reasonable expectation that material product information, such as the presence of a probable carcinogen like glyphosate, will be provided by a product manufacturer, especially when the manufacturer prominently features and affirmatively identifies the health-related attributes of the Products such as "Whole Grain", "Non GMO verified", "can help reduce cholesterol", and "may help reduce the risk of heart disease." By only identifying the health attributes of the Products and failing to disclose that the Products contain or likely contain glyphosate and glyphosate is a probable carcinogen, Defendants actively concealed this information from Plaintiff, Class members, and the general public. *See* representative Product labels, attached hereto as Exhibit A.

11. Defendants had a duty to disclose that the Products contain or likely contain glyphosate and that glyphosate is a probable carcinogen, which was known to Defendants and

unknown and/or not reasonably accessible to Plaintiff and consumers, on the Product labels where the disclosure could be viewed by Plaintiff and consumers at the point-of-sale.

12. By failing to disclose that the Products contain or likely contain glyphosate and glyphosate is a probable carcinogen and continuing to sell the Products in packages omitting this information, Defendants have and continue to deceive and mislead consumers, including Plaintiff.

13. As a result of Defendants' false and deceptive Product Health Representations, misleading half-truths and material nondisclosures, consumers will continue to purchase Defendants' Products that, unbeknownst to them, contain or likely contain glyphosate.

14. Plaintiff brings this action on behalf of himself and other similarly situated consumers who purchased the Products to halt the dissemination of this misleading and deceptive advertising message, correct the misleading perception it has created in the minds of consumers, and obtain redress for those who have purchased the Products. Based on violations of Illinois unfair competition law (detailed below), Plaintiff seeks declaratory, injunctive, and restitutionary relief for consumers who purchased the Products.

## JURISDICTION AND VENUE

15. This Court has original jurisdiction pursuant to 28 U.S.C. §1332(d)(2). The matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000 and is a class action in which there are in excess of 100 class members and some members of the Class are citizens of a state different from Defendants.

16. This Court has personal jurisdiction over Defendants because Defendants are authorized to conduct and do business in Illinois, including this District. Defendants marketed, promoted, distributed, and sold the Products in Illinois, and Defendants have sufficient minimum contacts with this State and/or sufficiently availed themselves of the markets in this State through

their promotion, sales, distribution, and marketing within this State, including this District, to render the exercise of jurisdiction by this Court permissible.

17. Venue is proper in this Court pursuant to 28 U.S.C. §§1391(a) and (b) because a substantial part of the events giving rise to Plaintiff Brandon's claims occurred while he resided in this judicial district. Venue is also proper under 18 U.S.C. §1965(a) because Defendants transact substantial business in this District.

**PARTIES**

18. Plaintiff Lawerence Brandon resides in Hoffman Estates, Illinois, and is a citizen of Illinois. Throughout the relevant period, Plaintiff Brandon routinely was exposed to, saw, and relied upon Defendants' Product Health Representations by reading the Quaker labels at various stores in the Chicago Illinois area. Plaintiff Brandon purchased the Products for approximately $4.00 each. At all relevant times, Plaintiff Brandon was unaware that the Products contained glyphosate, that glyphosate was a probable carcinogen, or that Defendants could not guarantee they did not contain glyphosate. Had Defendants disclosed on the packages that the Products contained or may contain glyphosate and that glyphosate was a probable carcinogen, Plaintiff Brandon would have seen and read that disclosure and would not have purchased them. As a result, Plaintiff Brandon suffered injury in fact and lost money at the time of purchase. Plaintiff Brandon continues to desire to purchase Quaker Oats products with healthy attributes that do not contain glyphosate, and he would purchase such a product manufactured by Defendants if it were possible to determine prior to purchase whether the Product contained or could contain glyphosate. Indeed, Plaintiff Brandon regularly visits stores such as Jewels, Aldi's and Walts, where Defendants' Products are sold, but will be unable to rely upon the Product Health Representations

and will not be able to determine if the Products contain glyphosate when deciding whether to purchase the Products in the future.

19. Defendant PepsiCo, Inc. is a North Carolina corporation whose headquarters is located at 700 Anderson Hill Road, Purchase, NY 10577. PepsiCo, Inc. is the parent company of Defendant The Quaker Oats Company. PepsiCo, Inc. manufactures, advertises, markets, distributes, and/or sells the Products to tens of thousands of consumers in Illinois and throughout the United States.

20. Defendant The Quaker Oats Company is a New Jersey corporation whose headquarters is located at 700 Anderson Hill Road, Purchase, NY 10577. The Quaker Oats Company is a subsidiary of Defendant PepsiCo, Inc. The Quaker Oats Company manufactures, advertises, markets, distributes, and/or sells the Products to tens of thousands of consumers in Illinois and throughout the United States.

## CLASS DEFINITION AND ALLEGATIONS

21. Plaintiff brings this action on behalf of himself and all other similarly situated consumers pursuant to Rules 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure and seeks certification of the following Class:

> **Multi-State Class Action**
> All consumers who, within the applicable statute of limitations period until the date notice is disseminated, purchased the Products in California, Florida, Illinois, Massachusetts, Michigan, Minnesota, Missouri, New Jersey, New York, and Washington.[2]

---

[2] The States in the Multistate Class are limited to those States with similar consumer fraud laws as applied to the facts of this case: California (Cal. Bus. & Prof. Code §17200, *et seq.*); Florida (Fla. Stat. §501.201, *et seq.*); Illinois (815 Ill. Comp. Stat. 502/1, *et seq.*); Massachusetts (Mass. Gen. Laws Ch. 93A, *et seq.*); Michigan (Mich. Comp. Laws §445.901, *et seq.*); Minnesota (Minn. Stat. §325F.67, *et seq.*); Missouri (Mo. Rev. Stat. 010, *et seq.*); New Jersey (N.J. Stat. §56:8-1, *et seq.*); New York (N.Y. Gen. Bus. Law §349, *et seq.*); and Washington (Wash. Rev. Code §19.86.010, *et seq.*). These statutes are referred to as "Similar Consumer Fraud Statutes."

Excluded from this Class are Defendants and their officers, directors, employees and those who purchased the Products for the purpose of resale.

22. In the alternative to a Multi-State Class, Plaintiff seeks certification of the following Illinois-Only Class:

**Illinois-Only Class Action**
All Illinois consumers who within the applicable statute of limitations period until the date notice is disseminated, purchased the Products.

Excluded from this Class are Defendants and their officers, directors and employees, and those who purchased the Products for the purpose of resale.

23. **Numerosity**. The members of the Classes are so numerous that joinder of all members of the Classes is impracticable. Plaintiff is informed and believes that the proposed Classes contain thousands of purchasers of the Products who have been damaged by Defendants' conduct as alleged herein. The precise number of Class members is unknown to Plaintiff.

24. **Existence and Predominance of Common Questions of Law and Fact**. This action involves common questions of law and fact, which predominate over any questions affecting individual Class members. These common legal and factual questions include, but are not limited to, the following:

(a) whether Defendants' alleged conduct is unlawful;

(b) whether the alleged conduct constitutes violations of the laws asserted;

(c) whether Defendants engaged in misleading and/or deceptive advertising; and

(d) whether Plaintiff and Class members are entitled to appropriate remedies, including restitution and injunctive relief.

25. **Typicality.** Plaintiff's claims are typical of the claims of the members of the

Classes because, *inter alia*, all Class members were injured through the uniform misconduct described above. Plaintiff is also advancing the same claims and legal theories on behalf of himself and all Class members.

26. **Adequacy of Representation.** Plaintiff will fairly and adequately protect the interests of Class members. Plaintiff has retained counsel experienced in complex consumer class action litigation, and Plaintiff intends to prosecute this action vigorously. Plaintiff has no adverse or antagonistic interests to those of the Classes.

27. **Superiority.** A class action is superior to all other available means for the fair and efficient adjudication of this controversy. The damages or other financial detriment suffered by individual Class members is relatively small compared to the burden and expense that would be entailed by individual litigation of their claims against Defendants. It would thus be virtually impossible for members of the Classes, on an individual basis, to obtain effective redress for the wrongs done to them. Furthermore, even if Class members could afford such individualized litigation, the court system could not. Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts. Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action. By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances here.

28. Plaintiff seeks preliminary and permanent injunctive and equitable relief on behalf of the entire Classes, on grounds generally applicable to the entire Classes, to enjoin and prevent Defendants from engaging in the acts described and requiring Defendants to provide full restitution to Plaintiff and Class members.

29. Unless a Class is certified, Defendants will retain monies received as a result of their conduct that were taken from Plaintiff and Class members.

30. Unless an injunction is issued, Defendants will continue to commit the violations alleged, and the members of the Classes and the general public will continue to be deceived and not know whether the Product Health Representations are true or if the Products continue to contain glyphosate.

## CLAIMS ALLEGED

### COUNT I
**Violation of the Illinois Consumer Fraud & Deceptive Business Practices Act, 815 Ill. Comp. Stat. Ann § 505/1 *et seq.* and Similar Consumer Fraud Statutes, *supra* note 2**
**(On Behalf of the Multi-State or Illinois-Only Class)**

31. Plaintiff repeats and re-alleges the allegations contained in the paragraphs above, as if fully set forth herein.

32. Plaintiff Brandon brings this claim individually and on behalf of the Classes.

33. In Illinois, the "Consumer Fraud and Deceptive Business Practices Act" 815 Ill. Comp. Stat. 505/1, *et seq.* ("the Act"), like the consumer fraud acts of numerous other states across the nation, prohibits deceptive acts and practices in the sale of such products as Defendants' Products. The Similar Consumer Fraud Statutes likewise prohibit the use of unfair or deceptive practices in the course of trade or commerce, and are to be liberally construed.

34. Plaintiff and Class members were injured by Defendant's false and deceptive misrepresentations and misleading half-truths, and the material omissions, which were material and deceived Plaintiff and Class members.

35. Defendants do business in Illinois, market, sell, and distribute the Products in Illinois, and engage in deceptive acts and practices in connection with the sale of the Products in Illinois and elsewhere in the United States.

36. Defendants' Products purchased by Plaintiff and Class members are "consumer items" as that term is defined under the Act.

37. Defendants misrepresented and deceptively concealed, suppressed, and/or omitted the material information known to it as set forth above concerning the Products which has caused damage and injury to Plaintiff and the Class.

38. Defendants' deceptive acts occurred in a course of conduct involving trade and commerce in Illinois and throughout the United States.

39. Defendants' deceptive acts proximately caused actual injury and damage to Plaintiff and Class members.

40. Defendants intended Plaintiff and Class members to rely on their deceptive acts described herein.

41. Defendants' conduct constituted a consumer fraud under the Act and the Similar Consumer Fraud Statutes.

42. Defendants' conduct is unfair under the Act and the Similar Consumer Fraud Statutes.

43. Plaintiff, on behalf of himself all others similarly situated, and the general public, seek declaratory relief and an injunction prohibiting Defendants from continuing such practices, damages, and all other relief this Court deems appropriate, consistent with the Act and the Similar Consumer Fraud Statutes.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for a judgment:

A. Certifying the Classes as requested herein;

B. Issuing an order declaring that Defendants are in violation of Illinois consumer fraud laws;

C. Enjoining Defendants' conduct;

D. Awarding actual, statutory, and punitive damages to Plaintiff and Class members, as appropriate;

E. Awarding restitution and disgorgement of Defendants' revenues to Plaintiff and the proposed Class members;

F. Awarding attorneys' fees and costs; and

G. Providing such further relief as may be just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial of his claims by jury to the extent authorized by law.

Dated: December 14, 2018               Respectfully submitted,

By: /s/ Todd L. McLawhorn

Todd L. McLawhorn
*tmclawhorn@siprut.com*
Stewart M. Weltman
*sweltman@siprut.com*
Michael Chang
*mchang@siprut.com*
SIPRUT PC
17 North State Street
Suite 1600
Chicago, Illinois 60602
Phone: 312.236.0000
Fax: 312.754.9616


Mila F. Bartos*
FINKELSTEIN THOMPSON LLP
3201 New Mexico Avenue
Suite 395
Washington, D.C. 20016
Phone: 202.337.8000
Fax: 202.337.8090

*To Be Admitted Pro Hac Vice*